UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Constance Leach,
        Claimant

        v.                              Civil No. 11-cv-363-SM
                                        Opinion No. 2012 DNH 128

Michael J. Astrue, Commissioner,
Social Security Administration
        Defendant

**O R D E R**

        Pursuant to 42 U.S.C. § 405(g), Constance Leach moves to
reverse the Commissioner's decision denying her application for
Disability Insurance Benefits under Title II of the Social
Security Act, 42 U.S.C. § 423 (the "Act").  The Commissioner
objects and moves for an order affirming his decision.


        Claimant's history of both physical and mental impairments
is lengthy and substantial.  That portion of the parties' joint
statement of facts dedicated to summarizing her medical history
and the numerous surgical and non-surgical treatments she has
undergone spans more than sixty pages, and the administrative
record in this case is comprised of nearly 1200 pages.  The
Administrative Law Judge's decision is correspondingly lengthy
and detailed, and it is clear that he devoted substantial time

and effort to familiarizing himself with the details of
claimant's impairments.  But, because the court concludes that
the ALJ did not identify a sufficient basis in the record for his
decision to discount the opinions and observations of claimant's
treating psychotherapist (Dr. Wagner), claimant's daughter
(Catherine Leach), and claimant's friend and former housemate
(Patricia Enoch), the matter must be remanded for further
proceedings.

**Factual Background**

I.  Procedural History.

In 2007, claimant filed an application for both Disability
Insurance Benefits ("DIB") and Supplemental Security Income
("SSI") benefits, alleging that she had been unable to work since
October 31, 1998.  Her application for SSI benefits was approved,
with a disability onset date of July 1, 2007.  But, her
application for DIB was denied, based on the conclusion that she
was not disabled prior to her date last insured (June 30, 2004).
She requested an administrative hearing, after which the ALJ
issued a decision in which he concluded that she was not
disabled.  Claimant appealed that denial to this court.
Subsequently, however, the parties filed an assented-to motion to
remand, so the ALJ might more fully evaluate claimant's mental

impairments prior to her date last insured.  The court granted
that motion.

In February of 2011, claimant (represented by counsel), a
vocational expert, and one of claimant's friends appeared and
testified before the ALJ.  A non-examining medical expert
testified by telephone.  And, because claimant's daughter was
unable to attend the hearing, the ALJ allowed her to present her
testimony in the form of an affidavit.  Five weeks later, the ALJ
issued his written decision, concluding that claimant retained
the residual functional capacity to perform the physical and
mental demands of a range of light work.  Admin. Rec. at 12.
Although claimant's limitations precluded her from performing her
past relevant work as a printing press operator, id. at 19, the
ALJ concluded that there was still a significant number of jobs
in the national economy that claimant could perform, id. at 20.
Accordingly, he determined that claimant was not disabled, as
that term is defined in the Act, at any time from October 31,
1998 (her alleged onset of disability) through June 30, 2004 (her
date last insured).  Id.

Claimant then sought review of the ALJ's decision by the
Decision Review Board, which was unable to complete its review

during the time allowed.  Accordingly, the ALJ's denial of
claimant's application for benefits became the final decision of
the Commissioner, subject to judicial review.  Subsequently,
claimant filed a timely action in this court, asserting that the
ALJ's decision is not supported by substantial evidence and
seeking a judicial determination that she is disabled within the
meaning of the Act.  She then filed a "Motion for Order Reversing
Decision of the Commissioner" (document no. 10).  In response,
the Commissioner filed a "Motion for Order Affirming the Decision
of the Commissioner" (document no. 12).  Those motions are
pending.


II.  <u>Stipulated Facts</u>.

    Pursuant to this court's Local Rule 9.1(d), the parties have
submitted a statement of stipulated facts which, because it is
part of the court's record (document no. 15), need not be
recounted in this opinion.  Those facts relevant to the
disposition of this matter are discussed as appropriate.


<strong>Standard of Review</strong>

I.   "<u>Substantial Evidence" and Deferential Review</u>.

    Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a

4

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

II.  The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a

preponderance of the evidence, that her impairment prevents her
from performing her former type of work.  See Gray v. Heckler,
760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F.
Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates
an inability to perform her previous work, the burden shifts to
the Commissioner to show that there are other jobs in the
national economy that she can perform.  See Vazquez v. Secretary
of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See
also 20 C.F.R. § 404.1512(g).

        In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6
(1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

        physical or mental impairment or impairments are of
        such severity that [she] is not only unable to do [her]
        previous work but cannot, considering [her] age,
        education, and work experience, engage in any other
        kind of substantial gainful work which exists in the
        national economy, regardless of whether such work

6

exists in the immediate area in which [she] lives, or
whether a specific job vacancy exists for [her], or
whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's
motion to reverse and the Commissioner's motion to affirm his
decision.

**Discussion**

I.   <u>Background - The ALJ's Findings</u>.

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§ 404.1520.  Accordingly, he first determined that claimant had
not been engaged in substantial gainful employment since her
alleged onset of disability: October 31, 1998.  Admin. Rec. at
10.  Next, he concluded that claimant suffers from the following
severe impairments: "left wrist tendinitis and tenosynovitis, and
a depressive disorder."  <u>Id</u>.  Nevertheless, the ALJ determined
that those impairments, regardless of whether they were
considered alone or in combination, did not meet or medically
equal one of the impairments listed in Part 404, Subpart P,

Appendix 1.  Admin. Rec. at 10-12.  Claimant does not challenge
those findings.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
a range of light work.[1]  He noted, however, that claimant could
use her left arm only occasionally, to assist her right arm; she
could not perform repetitive jobs involving grasping and handling
with her left hand; work instructions provided to her had to be
relatively simple; and she could not interact with the public on
a regular basis or perform jobs with high production
expectations.  Id. at 12.  In light of those restrictions, the
ALJ concluded that claimant was not capable of returning to her
prior job as a printing press operator.  Id. at 19.

---

[2]    "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of a vocational expert, he concluded that, despite claimant's exertional and non-exertional limitations, she "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" through the date on which she was last insured.  Id. at 20. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, at any time from her alleged onset of disability, through her date last insured.

In support of her motion to reverse the decision of the Commissioner, claimant advances four arguments: (1) the ALJ improperly discounted the opinions of her treating source, Dr. Wagner; (2) the ALJ improperly discounted claimant's credibility; (3) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and (4) the ALJ's determination that claimant could perform other work existing in significant numbers in the national economy is not supported by substantial evidence.  The court need only address the first of those arguments, since it is dispositive of the pending motions.

II.   <u>The Opinions of Claimant's Treating Source</u>.

Claimant challenges the ALJ's determination that the opinion of her treating psychologist, Dr. Wagner, "is not supported by his treatment notes or the medical record in general and is entitled to little weight."  Admin. Rec. at 18.  More specifically, she alleges that Dr. Wagner's numerous treatment notes:

> read in conjunction with the Psychiatric Evaluation for Affective disorders and Anxiety Related disorders, the Report of Individual with Mental Impairment, and his letter of clarification, as well as the records of Dr. Gendron and [claimant's] other treating doctors demonstrate the [she] could not work 40 hours a week on a regular, sustained basis.

Claimant's Memorandum (document no. 10-1) at 15-16 (citations omitted).

In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . .  When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion.  We will

> always give good reasons in our notice of determination
> or decision for the weight we give [the claimant's]
> treating source's opinion.

20 C.F.R. § 404.1527(c)(2).  See also SSR 96-2p, Policy

Interpretation Ruling Titles II and XVI: Giving Controlling

Weight to Treating Source Medical Opinions, 1996 WL 374188 (July

2, 1996) (when the ALJ renders an adverse disability decision,

his or her notice of decision "must contain specific reasons for

the weight given to the treating source's medical opinion,

supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical

opinion and the reasons for the weight.").

Here, Dr. Wagner began treating claimant in 2001 and saw

her, on average, once or twice each month until April of 2003,

when she could no longer afford treatment.  Claimant resumed

treatment with him again in August of 2004.  Unfortunately, the

treatment notes from each of Dr. Wagner's many sessions with

claimant are relatively brief.  For that reason, the ALJ

concluded that his assessment of claimant's ability to engage in

substantial gainful activity was "unsupported by his treatment

notes."  Admin. Rec. at 18.

11

In response to the suggestion that his treatment notes did
not adequately support his conclusions about claimant's capacity
for gainful employment, Dr. Wagner prepared a written statement,
in which he noted that:

> In general, treatment notes reflect my role as
> [claimant's] psychologist seeing her for pain
> management and accompanying depression. . . . When
> asked specifically about her work capabilities, I will,
> and have, commented on the categories presented to me,
> but notes of my ongoing treatment reflect her clinical
> issues, her attempts to deal with her pain, and the
> factors influencing her situation - both caused by her
> work injury and those made harder to cope with due to
> pain, injury, lack of physical capabilities and
> depression.  Mr role as ongoing psychotherapist does
> not include a work capability assessment <u>from note to
> note</u>.

Admin. Rec. at 1161 (emphasis in original).  When Dr. Wagner was
specifically asked about claimant's ability to engage in
substantial gainful activity, he repeatedly opined that she was
not able.  <u>See</u> "Psychiatric Evaluation Form for Affective
Disorders," Admin. Rec. at 922-26 (completed by Dr. Wagner and
addressing claimant's condition from 2001 through her date last
insured); "Psychiatric Evaluation Form for Anxiety Related
Disorders," <u>Id</u>. at 927-33 (same); and "Report of Individual with
Mental Impairment," <u>Id</u>. at 1163-64 (same).  Additionally, in his
written statement detailing claimant's impairments, the side-

12

effects of her various medications, and the effects of her depression and chronic pain, Dr. Wagner concluded that:

> Her conditions are chronic, she continues to have similar environmental stressors, and her capabilities remain limited.  She has been psychiatrically hospitalized; is taking medications for pain that limit attention, concentration and sustainability of activities; and is hampered by ongoing pain, depression and resultant lack of work capacity.

Id. at 1162.

In deciding to afford the opinions of Dr. Wagner "little weight," the ALJ echoed the view espoused by Dr. Kutcher, the non-examining medical expert who testified at claimant's hearing. In short, Dr. Kutcher testified - and the ALJ agreed - that Dr. Wagner's notes were not sufficiently detailed to permit him to conclude that Dr. Wagner's opinions about claimant's abilities were adequately supported.  See, e.g., Admin. Rec. at 129, 135.

The problem is this: viewed in its entirety (including the testimony given before the ALJ) the record does support Dr. Wagner's conclusions.  As noted above, when asked, Dr. Wagner gave a detailed statement outlining the basis for his conclusions.  Admin. Rec. at 1161-62.  But, when Dr. Kutcher testified before the ALJ, he did not have the benefit of Dr.

Wagner's more thorough narrative discussing the bases for his various conclusions about claimant's impairments.

Dr. Wagner's conclusions were also fully supported by the testimony of claimant's former roommate, Patricia Enoch (Admin. Rec. at 100-06) and claimant's daughter (Admin. Rec. at 407-08). And, as the Commissioner himself has noted, such testimony can be particularly useful when trying to determine the onset date of progressive impairments, like clamant's.[2]

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. . . . If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation.  Information may be obtained from family members, friends, and former employers to . . . furnish additional evidence regarding the course of the individual's condition.

SSR 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249 at *3 (1993).  See also Id. at * 5 ("Nonmedical Sources of Evidence - Lay evidence usually relates to the individual's

---

[2]   As noted above, the Commissioner acknowledges that claimant's physical and mental impairments progressed to the point that she was disabled as of July 1, 2007.  The question presented to the ALJ was whether those impairments were sufficiently severe to render claimant disabled on or before her date last insured, June 30, 2004.

14

reasons for stopping work, activities since the alleged onset
date, specific instances of abnormal behavior, and medical
treatment history, if any.  Such evidence should be evaluated in
conjunction with the medical record to determine whether an
earlier onset date can be established.").  Nevertheless, the ALJ
largely dismissed the testimony given by those women, affording
it only "some weight."  Admin. Rec. at 18-19.

That claimant's friend and daughter are, as noted by the
ALJ, "not acceptable medical sources," Admin. Rec. at 18-19, is
not particularly relevant.  Their testimony was not offered to
establish the existence of a medical impairment.  Rather, it was
introduced to show the day-to-day effects of claimant's
impairments and the side-effects of her many medications.  And,
their testimony fully supported the conclusions of Dr. Wagner
(though the medical expert, Dr. Kutcher, testified that he
consciously disregarded such testimony when evaluating whether
Dr. Wagner's conclusions were adequately supported by the record
evidence.  Admin. Rec. at 115).[3]

---

[3]     The court has no doubt that the ALJ fully understood the
reason claimant's friend and daughter were called to testify.
Unfortunately, however, his written decision implies that he
discounted the value of their testimony, at least in part,
because they were not acceptable medical sources - something they
never purported to be.  See, e.g., Admin. Rec. at 18 ("[Ms.

In concluding that claimant was not disabled at any time
prior to the expiration of her insured status, the ALJ afforded
"great weight" to the opinions of two physicians: the testifying
medical expert, Dr. Kutcher, and the non-examining state agency
physician, Dr. Jonathan Jaffe.  Admin. Rec. at 17.  That was
likely an error.  First, neither of those physicians examined
claimant; both based their opinions exclusively on a review of
her medical records.  But, when Dr. Kutcher testified before the
ALJ, he did not have the benefit of Dr. Wagner's more thorough
narrative in which he discussed the medical bases for his various
conclusions about claimant's impairments.  See Admin. Rec. at
1160-62.   And, Dr. Jaffe's report addresses only claimant's
physical impairments and limitations; it was not intended to
address, nor does it address, claimant's significant mental
impairments.  See Id. at 888-895.  Consequently, Dr. Jaffe had
the benefit of neither Dr. Wagner's treatment notes nor his
detailed written statement.  Plainly, that was compelling and

Enoch's] opinion is not supported by the medical evidence and she
is not an acceptable medical source under the regulations.").  Of
course neither Ms. Enoch nor claimant's daughter gave any
"opinions" about either claimant's medical condition or whether
she was "disabled" under the Act.  Instead, they merely recounted
their observations of claimant, discussed the deterioration of
her condition, described how she dealt with her various
impairments on a day-to-day basis, and talked about her ability
(or inability) to perform various activities of daily living.

highly relevant evidence which, had Dr. Kutcher and Dr. Jaffe had access to it, might well have altered their own opinions.

And, finally, in reaching their conclusions about claimant's capabilities, both Dr. Kutcher and the ALJ relied upon the opinions expressed by Amy Feitelson, M.D.  Dr. Feitelson performed a consultative psychiatric examination of claimant in December of 2002.  Admin. Rec. at 424-28.  But, the conclusions drawn by Dr. Feitelson are, at a minimum, suspect since she was under the erroneous impression: (1) that claimant had never been administered any psychiatric medications; and (2) that claimant had never acted on her suicidal ideations.  In fact, claimant had been treated with psychiatric medications and had (apparently) attempted suicide several times, beginning when she was in high school.  See Admin. Rec. at 1091 (report that claimant had tried "to kill herself four or five times in the past" and, on at least one occasion, "sliced her wrists").  See also Id. at 48; 81-83 (claimant testified before the ALJ that she tried to commit suicide at age 17 and, later, attempted to kill herself with a firearm, but her husband intervened and stopped her).

17

**Conclusion**

The ALJ afforded only "some" or "little" weight to the testimony of the three people who are likely most familiar with claimant, the combined effects of her physical and mental impairments, her day-to-day behaviors, her capacity to engage in various activities, the side effects of her medications, and her overall credibility in describing the extent (and impact) of her impairments: claimant's adult daughter, claimant's friend and former housemate, and claimant's long-time treating psychologist. While the ALJ is certainly permitted to discount the testimony of witnesses, the court cannot conclude that he adequately explained his decision to do so in this case.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 10) is granted to the extent she seeks a remand for further proceedings.  The Commissioner's motion to affirm his decision (document no. 12) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent

with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 9, 2012

cc:  Elizabeth R. Jones, Esq.
     Robert J. Rabuck, Esq.